IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

ANTHONY NEUBAUER,

              Defendant.

23-CR-36-W
**(FILED UNDER SEAL)**

---

## GOVERNMENT'S RESPONSE TO DEFENDANT'S POST-SENTENCING HEARING SENTENCING SUBMISSION

**THE UNITED STATES OF AMERICA**, through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, Michael J. Adler, Assistant United States Attorney, of counsel, hereby files its Response to the defendant's Post-Sentencing Hearing Sentencing Submission (hereinafter, "Defendant Submission"). The government previously filed its own memorandum which addressed the testimony of two witnesses at the sentencing hearing held on November 19, 2025, as transcribed at Doc. 142 (hereinafter, "Transcript"). See Doc. 143. The government addressed the testimony of the two witnesses at the hearing because the purpose of the hearing was to explore the statements made by the defendant to government witnesses. The defendant's submission largely focused on a different question: whether there was proof that the defendant had killed Joseph Anthony. The defendant's rationale that the proof was insufficient is summarized by two key points: 1) the testimony of Pheonix Kirsch is not credible; and 2) all other Grand Jury testimony is not credible. The defendant's arguments are misplaced and should be rejected.

# I.   SENTENCING GUIDELINES

The defendant addresses the standard pertaining to an enhancement of a sentence. The government reiterates that the guidelines range under the plea agreement is 240 months. The defendant pled guilty to kidnapping that resulted in death. 240 months is the statutory maximum sentence and cannot be enhanced. The government merely contends that the Court should sentence the defendant to the guidelines and not depart downward to 120 months as requested by the defendant. The defendant objected to the Presentence Investigation Report ("PSR"), specifically including admissions made by the defendant to others that he had killed Joseph Anthony. The government has already addressed these objections. Doc. 134. For the reasons detailed below, the evidence at the hearing is clearly sufficient to keep those statements in the PSR. Indeed, they are sufficient for the Court to find that the defendant killed Joseph Anthony.

# II.   ARGUMENT

## A.   Phoenix Kirsch Is Credible

If the Court finds Ms. Kirsch credible, then it may find that the defendant personally killed Joseph Anthony. The defendant argues that Phoenix Kirsch is not credible for two reasons: 1) she suffered memory impairment and her struggles with addiction impacted her perception; and 2) the first time she spoke with the FBI she had a motive to lie; 2). Def. Submission at 4-5. The defendant mistakes credibility for sainthood. Ms. Kirsch did not minimize or hide from her struggles with drug addiction. She did not hide from areas of her memory that were foggy. She testified as to what she remembered and was clear about which facts she was uncertain of. The defendant claims that "Ms. Kirsch's testimony was, at best, speculative." Def. Submission at 24. But Ms. Kirsch was far more specific about where she

was filling in the gaps than the defendant is in his submission. She was clear it was a "vulnerable moment" when he confessed, but could not definitively remember where the conversation had happened. Transcript at 15. When pressed by defense counsel, she did not hesitate to acknowledge that drugs had fogged her memory. Id. at 23-24. But she also testified that the defendant's murder confession itself was clear. Id. at 31. Ms. Kirsch's testimony on the defendant's confession bears the hallmarks of credibility. She was clear about her shortcomings, and truthful about what she remembered clearly. It is absurd for the defendant to expect perfect memory with memorized dates and times. Def. Submission at 5. It is equally absurd to label this as "speculative" testimony. Ms. Kirsch's acknowledgment of her own struggles make her more credible and her testimony should be accepted.

The defendant's focus on what Ms. Kirsch did not know ignores everything she was clear about actually knowing. She described how the defendant told her 1) the motive for the murder; 2) the way in which he manipulated (or tricked) Joseph Anthony to go to Pennsylvania, 3) the specific car they drove to get there, 4) the detail that the defendant held a gun to the back of Joseph Anthony's seat during the drive to Pennsylvania; 5) the location of the murder on a hill on Matthew Rudy's property in Sugar Grove, Pennsylvania, 6) the fact that the defendant pretended to fall down the hill prior to Joseph Anthony going to help him, and 7) how the defendant recalled shooting Joseph Anthony in the head and torso. Id. at 13-14. She even described the defendant's declaration to her that the FBI had "walked right over the body" during their search of Rudy's property. Id. at 16. Notably, the defendant told Ms. Kirsch these things long before Joseph Anthony's body was ever recovered by the FBI. Even more significant, Ms. Kirsch first told the FBI what the defendant told her in 2016. Joseph Anthony's remains were found in 2021. The fact that she knew these facts five years earlier

heavily corroborates her testimony. She simply could not have known these details unless the defendant told them to her. Moreover, Ms. Kirsch's recollection was consistent throughout the years. The defendant's suggestion that her consistency is incompatible with credibility is difficult to decipher.

Despite the defendant's focus on a purported motive to lie in 2016, Ms. Kirsch had no motive to lie in either the Grand Jury nor at the evidentiary hearing. On both occasions, she had no trouble with the law. She did not ask for or need anything. The FBI had not even assisted her in the past. In fact, on both occasions, Ms. Kirsch was very sympathetic to the defendant, expressing that she still cared for him. Indeed, Ms. Kirsch's emotions were apparent throughout her testimony. She openly expressed her disdain for Matthew Rudy, and was adamant that Rudy was equally culpable to the defendant. Id. at 25.

**B.      The Grand Jury Witnesses Were Credible**

As the government previously noted, the Court may consider Grand Jury transcripts so long as it finds "some minimal indicia of reliability." United States v. Martinez, 413 F.3d 239, 244 (2d Cir. 2005); United States v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007) ("[f]actual matters considered as a basis for sentence must have some minimal indicium of reliability beyond mere allegation."); U.S. Sentencing Guidelines Manual § 6A1.3(a) (2024) ("sufficient indicia of reliability.").

The defendant's argument that other Grand Jury witnesses were not credible suffers from a misunderstanding of the value of said testimony. The witnesses who testified in the Grand Jury all offered evidence that would have proven the defendant's guilt of kidnapping,

and that death resulted (a charge to which the defendant has already admitted guilt). At sentencing, the crux of the debate has shifted to the defendant's personal involvement in the shooting of Joseph Anthony.[1] The testimony of both Pheonix Kirsch and Robert Kinne also provide the minimal indicia of reliability to the testimony of other witnesses.

As noted in the government's prior filing, docs. 132 (redacted) and 134, ███████████ testified that the defendant "asked me if I needed anybody murdered, that he was a hit man. Just out of the blue." ███████████. He continued to elaborate that the defendant said, "do you know Joe Anthony" and "I did that." Id. at 4. The defendant now claims that ██ ███████ has recanted his testimony. This is incorrect. There is no evidence whatsoever that ███████████ has recanted his testimony. On September 5, 2024, ███████████ claimed to the government that he had slipped on the ice and hit his head and has lost all memories. This report was provided to the defendant as part of the government's Jencks material. ███████ ████. The only testimony from ███████████ was that the defendant confessed to him that he murdered Joseph Anthony. This corroborates the testimony of Ms. Kirsch.

███████████████████████████████████████████████████ ███████████████████████████████████. ███████████████████████████ his shoes were caked in mud and his clothes were dirty. ███████████. This corroborates the testimony of Ms. Kirsch.

---

[1] The defendant repeatedly argues that the plea agreement is inconsistent with the possibility that he murdered Joseph Anthony. The plea agreement is silent as to who murdered Joseph Anthony because it does not matter for purposes of the offense or the guidelines. The argument at present is about sentencing factors under 18 U.S.C. § 3553(a).

Robert Kinne, the defendant's roommate and friend, attempted to help the defendant at the hearing. Nonetheless, his testimony that the defendant told him "he isn't buried in Kennedy. He is buried in Pennsylvania" mirrored his Grand Jury testimony. Mr. Kinne corroborated Ms. Kirsch that the defendant knew where Joseph Anthony was buried. The defendant now argues that Mr. Kinne's testimony should be totally disregarded. Notably, the sentencing hearing was largely scheduled because of a belief by defense counsel that Mr. Kinne would recant his testimony. Now that Mr. Kinne has not recanted his testimony, the defense urges the Court to ignore it altogether. The defendant's statement that "he is buried in Pennsylvania" was made moments after the defendant lied to the FBI and is significant evidence of the defendant's culpability. Mr. Kinne testified in the Grand Jury that the defendant was "proud" when the defendant told him about this.

The testimony of Special Agent Chad Artrip detailed the 7 times he spoke with the defendant between 2015 and 2021. Gov't. 3504AK. Notably, unlike Ms. Kirsch, the defendant's story changed every single time he spoke with the FBI. Indeed, the defendant's story evolved from not being with Matt Rudy or Joseph Anthony at all to admitting he went to Pennsylvania with the two of them. Key facts in Special Agent Artrip's testimony, including the topography of Rudy's property and the gradient of the hill where Joseph Anthony's remains were buried, Gov't Exs. 111 and 112, corroborate Ms. Kirsch's testimony.

Much of the defendant's submission focuses on Matt Rudy, the defendant's co-conspirator. Rudy was not a witness at the hearing as the purpose of the hearing was not to litigate all facts and circumstances linking the defendant to the death of J.A. Rudy's credibility is not an issue here. Indeed, the government acknowledges that Rudy would likely have been

a flawed witness at trial. But the government would not have needed to rely on Rudy's testimony in a vacuum. Rudy's testimony still fit within the narrative of the other witnesses, including the defendant himself. Moreover, it is particularly notable that the FBI had unsuccessfully searched Rudy's property twice. The defendant hyperbolizes the impact of Rudy's legal troubles at the time he led the FBI to where Joseph Anthony's remains lay buried. Rudy was found with personal use quantity cocaine and only faced the potential federal charge of being a user of controlled substances in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). Ultimately, but for Rudy pointing to the exact location of the burial, Joseph Anthony's remains would never have been found. Rudy was not protected by any proffer agreement when he led the FBI to the remains of Joseph Anthony. Nor was his ███████ ███████ protected by any proffer agreement either. He waived the statute of limitations to plead guilty to his role in the burial of Joseph Anthony.

The defendant argues that Rudy murdered Joseph Anthony. Def. Submission at 14-15. But the defendant's path to this conclusion is not based on evidence or testimony. It is only based on a combination of various logical leaps taken by the defense. He argues that the defendant would never have chosen Rudy as an accomplice, while ignoring that they were narcotics accomplices already. He points to Rudy's ability to shoot a gun while ignoring the uncontested fact during the detention phase that the defendant was an expert marksman. Most significantly, he points to inconsistencies between Ms. Kirsch's testimony and ███████ ██████████████████████████████████████████. This argument fails for two reasons. First, Ms. Kirsch was not present when Joseph Anthony was murdered. She was recounting what the defendant told her. Inconsistencies between the defendant and his co-conspirator are unsurprising. The defendant's version of events need not mirror the

version provided by Rudy. Despite this, it is notable that both the defendant and Rudy agreed on the only detail that is now in debate: both acknowledged that the defendant was the one who pulled the trigger and murdered Joseph Anthony.

The defendant focuses on the absence of evidence about the defendant possessing a firearm on the evening of Joseph Anthony's murder. ████████████████████████ ████████████████████ ████████████████████████ ████████████████ First, ████████████ when given an opportunity to put a gun in the defendant's hand lends more credibility to his testimony. Rather than being evidence that the defendant did not have a gun, it is only evidence that Rudy, who everyone agrees was driving the vehicle, did not know the defendant was holding a gun. Indeed, the only person who knew this was the defendant himself; and he told Ms. Kirsch. The mere fact that other witnesses did not know the defendant had a gun does not prove he did not, in fact, have one.

The defendant argues that only Rudy had a motive to kill Joseph Anthony. Ms. Kirsch testified that the defendant told her that he murdered Joseph Anthony because of a sexual assault on Rudy's girlfriend. Specifically, she stated "he had told me that Joe had raped Rudy's girlfriend, and they took him to Sugar Grove and killed him." Transcript at 13. Had the matter gone to trial there would have been two motives for the defendant murdering Joseph Anthony. But the fact that one motive also benefited Matthew Rudy does not absolve the defendant.

The testimony at the hearing does not support the defendant's conclusory claim that Rudy killed Joseph Anthony. The testimony on its own is sufficient for the Court to find by a preponderance of the evidence that the defendant murdered Joseph Anthony.

### III.   <u>CONCLUSION</u>

The testimony at the sentencing hearing supported the government's request for a sentence consistent with the sentencing guidelines of 240 months. This is the correct guideline regardless of whether or not the defendant personally murdered Joseph Anthony. Nobody disputes that's the defendant kidnapped Joseph Anthony and that death resulted. Nonetheless, the Court should find that the PSR is correct to include the defendant's admissions to other witnesses. The government respectfully requests that the Court deny the defendant's request for a below-guidelines sentence.


DATED:    Buffalo, New York, January 27, 2026.


                MICHAEL DIGIACOMO
                United States Attorney


BY:    <u>s/MICHAEL J. ADLER</u>
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        716/843-5857
        Michael.Adler@usdoj.gov